2018-2046, Mr. Principato. Good morning and may it please the Court, Daniel Principato appearing for the Secretary of Health and Human Services. The Court of Federal Claims in this case erred in three respects. First, the Court exceeded its jurisdiction by sui sponte revising a long final judgment on the merits on review of a subsequent motion for final merits determination. It erred by adopting expansive dictionary definitions of the damages provisions in the Vaccine Act. And finally, the Special Master erred by determining that projected future attorney's fees and costs had been incurred. Turning first to jurisdiction, the Supreme Court has long held that the time to file an appeal is mandatory and jurisdictional. This Court has further held that the time to file a motion for review from the Special Master's decision is jurisdictional. And it is well settled that an unresolved issue of becoming final. Vaccine Act proceedings, as in this case, are typically resolved in two phases. First, the Special Master... Let me ask you this. Is there any way for these kinds of costs ever to be recoverable? Or is it your position that absolutely not? For the future fees and costs of a guardianship, these are not recoverable under the Act. There's no... Even if they're put into the damages agreement and negotiated? Well, we disagree that these would be compensable as damages. And we disagree with the Court of Federal Claims' decision that they are... So you're saying they're not compensable at all? They're not compensable under the Act. As damages or as costs? Correct. The costs for maintaining a state court guardianship are not compensable as damages or attorney's fees under the Act. I'm a little confused then because you do say in the stipulated damage proffer that you understand that this is a state court guardianship that's subject to Florida law, which obviously has all of its component parts, which are these costs. So why even recite that fact if it can't be recoverable? Florida requires these costs to be incurred, but these are not costs that are required under the Vaccine Act. Guardianships are not proceedings that are on the position. I'm just a little concerned that it was the government who inserted that language into the proffer, which would seem to imply, at least I would think to the petitioner or petitioner's counsel, that the government understood that there were going to be costs that continued to be incurred and that they were going to be contemplated. Why put that language in there if you didn't think it was even relevant? The government understands that the costs are going to be incurred. It's just a matter of whether these are compensable under the Vaccine Act. It's important to remember that guardianships are not something that are unique to the Vaccine Act. Any normal tort plaintiff in Florida that involves a minor are going to incur. You haven't answered my question. Why acknowledge the existence of the fees if you knew up front they were not going to be compensable? Why not just say, or why not go so far as to say there are these fees, but they can't be recovered? And we did acknowledge that there were fees for the establishment of the guardianship, but we didn't contest entitlement to those. So I'm not sure if I'm understanding the question correctly, but... I'm sorry, what's the difference between the establishment and the maintenance? There are a couple of differences. The Act requires legal representation to bring a petition, so that's a requirement under the Act. And the second distinction is that past costs for establishing guardianship are fees that have been incurred. And that's a requirement under 15E. So the statute, or not the statute, and now I'm just talking about 15E, never mind 15A. You have a, to my mind, pretty good argument on the jurisdictional point about 15A. So I'm kind of interested in the special master's ground. Our decision in Black, and you I think rely heavily on that, and indeed say that the key there, the key to what is incurred is whether you have incurred a liability. Why did Mrs. McCulloch not incur a liability to maintain the status under which her daughter, her charge, her legal, for which she is, for whom she is legally responsible as guardian, would actually get the annuity payments that are part of the judgment? Oh, well, these are projected future costs. These aren't costs that are due at any time now. Let's shift now back from costs, which I'll try to make my point clearer. Liability has to be incurred. Why did she not incur the liability to maintain the ability for her legal charge to receive the judgment's benefits? Well, there's no, when you think about liability, there's no way anyone can make a claim against her for not paying these at this point. There's no real liability. If she just decided, for example, yeah, I'm just going to give up the benefits. I'm not absolutely required to get them. So even though whatever the large sum of money is, the decades worth of annuity that my daughter is entitled to under this judgment, I'm just going to give it up. You think that she doesn't have potential liability? That would be a liability that would attach in the future. She would have to make that decision sometime in the future. You don't think that she's currently liable for, under her guardianship obligation, to make the payments to carry out her function as guardian to provide her daughter the money that's part of the judgment? She becomes liable in the future to make those payments and to file all of those requirements under Florida state law. She's not currently required to do any of those. She becomes liable as time goes on. And so 15E is, as the Court of Federal Claims actually found here, the special master's decision carries the Vaccine Act's text too far afield of its plain meaning. And so specifically, the attorney's fees provision in the Act provides that a petitioner may be awarded fees and costs incurred in any proceeding on a Vaccine Act petition. By the way, does the government have a position about whether expert fees are awardable under 15E? Yes, expert fees are awardable under 15E. Those are costs that are incurred on a petition and that are incurred during the proceedings of a petition. And when an attorney's fees motion is filed, these are passed. And they're costs, notwithstanding the background rule recently reiterated by the Supreme Court in Remini Street, that costs are limited to 1821 and 1920, which include a tiny bit of expert fees, but not fees. I'm sorry, I'm not familiar with the case, but it's the government's position that expert fees in Vaccine Act proceedings are properly fees and costs that are sought under 15E. And when they are sought, these are costs that have already been incurred. Right, 15E doesn't equate to litigation costs, right? It's broader. It's broader. It's fees and costs that are incurred for prosecuting a proceeding on a petition. So what if, when the guardianship's established, there is a commitment that says, I will pay X dollars every year going forward, which you can say is probably an implied commitment. So assuming it is an actual commitment, how is that not incurred as of that point in time? If there can't be a claim brought against the petitioner for not paying these, it has to be something that is incurred or something that's incurred in the past. If there's a commitment to pay something in the future, there's no liability that attaches until you don't, until you have to pay that, that fee or that cost. Well, the difference is the liability and the damages. So wouldn't the liability attach even if the damages haven't yet been sought? There wouldn't be an obligation to pay that until the payment became due. And this is exactly what the court said in black. Would the guardianship, if they didn't make the payments under Florida law, would the guardianship dissolve? I don't know what exactly would happen, the consequences of failing to pay it. I don't know if it would dissolve. I just don't know the answer to that question. There's no risk that the guardianship is gone. How many states have these kinds of obligations? We only see a few. I can't, I don't know exactly the number who have them and don't have them. It's hard to, it must prove a negative to know which states don't have them. But we see them in a few cases, and Florida is the big one. We saw Florida in this case, Florida and Crespo.  Maybe North Carolina or Virginia also have them. But these are fees and costs that are relatively new that are being brought in vaccine proceedings. And so the court has decided virtually the same question in black. And that case dealt with the provision of the act that has since been repealed. But that provision, the repealed provision, required petitioners to have incurred greater than $1,000 of expenses before filing a Vaccine Act petition. And the court rejected an argument that would have allowed petitioners to file petitions based on anticipated future payments. The court specifically concluded that the term incurred is used in the conventional manner in the Vaccine Act. Did that involve a situation where it was a legal condition for receipt of the benefit of the judgment itself? Here it would be the annuity that you maintain the status as guardian or else the person on whose behalf you are acting will not, in fact, get the benefit of the judgment. Now, I don't believe it did, but I don't think that that is a dispositive fact. That's the essence of, at least to me, the fact to consider the legal relevance of here. I don't think it's a dispositive fact. And it seems to turn, in your view, on whether the term liable, which Black used as a translation of incurred, includes a legal obligation for making future premium payments, let's call them, in order to get the benefit of the judgment that is being entered in this case. That's not a lot of a big stretch, is it? The Congress was aware of guardianships when it created the Act, and it didn't provide for these kinds of fees and costs to be provided for under 15A. The fact that a guardianship is necessary to continue to receive a benefit doesn't transform it into an incurred cost. An incurred cost is a past cost that someone is currently liable for. And so that's really what Black stands for. And so in turning to the jurisdictional question, the Vaccine Act, as I mentioned before, the Vaccine Act proceedings have two distinct phases. First, a special master determines the merits and then determines attorney's fees. Your petitioner was awarded compensation, and the parties resolved damages. The Secretary filed a proffer on November 28th, 2016. And that day, the special master entered a decision in accordance with the proffer, stating that the damages accounted for all elements of compensation available. If we agree with you on jurisdiction, is the question of entitlement under either A or E moot? It would be, yes. Under 15A, it would be moot if you agree with us under the jurisdictional question. That was a two-part question, 15A or 15A. Not under 15A. 15A would still be a live issue. And I see my time for rebuttal has come up. We will save it for you. Is Chiam-Polillo, was that right? Yes. May it please the court. Christina Chiam-Polillo representing Rachel McCulloch as guardian over AM, petitioner appellee. First, I'd like to discuss the special master's award of attorney's fees and costs under Section 15E. The special master properly awarded these costs to maintain guardianship because these costs were incurred on a proceeding on the petition. As you are aware, Section 15 of the Vaccine Act allows for compensation to petitioners. 15 allows for compensation as a whole. 15E specifically grants the special master the authority to award attorney's fees, attorney's costs, and other costs. The list is not exhaustive. Other costs is the phrase used. In the present case, the respondent does not object to the costs used to establish guardianship. Respondent concedes that under the proffer they filed and the special master's decision that the establishment of guardianship was a precondition to payment. Even if once a guardianship is established, there is by law, by operation of law, an ongoing payment obligation. How is that ongoing payment obligation already incurred within the meaning of black? Well, I think within the meaning of black, first I think it's notable that this court has already interpreted the term incur in the context of the Vaccine Act in black. And they have done so by determining that to an incurred expense means to pay or become liable. The Court of Federal Claims in that same case determined that liability or the moment one becomes legally liable is at the moment, not at the moment when one pays off the debt, but when one becomes legally liable.  Guardianship for the remainder of AM's life in order to give effect to the special master's decision awarding damages and the judgment awarding damages, they call for an annuity that is making monthly and annual payments to the guardian of AM for the rest of AM's life. And the payments are significant. Her damages are significant. And the underlying merits decision, that is certainly discernible. But the payments being made to her on a monthly and annual basis are also significant. So the legal liability to keep that guardianship maintained for the remainder of her life exists at the time of judgment. It is the only, the guardianship is the only vehicle by which AM is able to receive the compensation awarded to her. So within the meaning of black, so this just keeps to my mind coming down to this question, whether when you incur an obligation to make future payments, whether you have, whether that is what is covered by 15 E's reference to incurred or whether you actually have to, you don't incur the obligation to make each payment until that payment is due. How do we think about that choice? Well, certainly the, I understand what you're saying. The payments will be made in the future. But petitioner Rachel McCulloch is legally liable to give effect to the judgment. The Court of Federal Claims issued a judgment that supplies AM with compensation for her injuries. The guardianship must be maintained to give effect and to give rise to that judgment. And remind me, the special master's order here, what did it say about what would happen if the family moved out of Florida and out of North Carolina and out of any state into a place where there were no fee, guardian maintenance fee? The special master's order, are you speaking of the special master's fee decision? Yes. Yes. So the special master actually addressed respondents' concerns of a windfall coming to the petitioner should something like that happen. And he proposed certain mechanistic tools to, you know, kind of award off that from happening. There's the proposal that an annuity could be purchased for the government on the contingency of AM's life. There's also, it's not specifically in his decision, but there are other mechanisms and tools that the respondent and the petitioner could consider to effectuate the Court of Federal Claims judgment, all while addressing respondents' concerns of a windfall. There's also no indication that petitioner intends to move out of state. I understand that is a large, that is a possibility. And actually, it's something that was recently addressed in a special master's decision, Martin v. Secretary of Health and Human Services. The special master there, it's on point with an award of fees to maintain a guardianship. The special master there understood respondents' concerns, but balanced that with the giving rise in effect to the judgment to effectuate the judgment and provide compensation to AM. But the Court of Federal Claims didn't agree with the special master's interpretation of 15A, right? The Court of Federal Claims, the judge in the Court of Federal Claims specifically talked about cost, petitioner's cost awarded under 15A. But what is significant is that he did not vacate the special master's decision. He affirmed the decision. He affirmed the decision under 15A, but acknowledged that the analysis under 15A would be flawed, right? In his opinion, he did say that the costs are better awarded under 15A. But ultimately, he did not vacate the special master's decision. And the judgment that issued in April 2018 gave effect to the special master's decision, as well as the Court of Federal Claims decision in awarding these costs to petitioner. Do you know how many states other than Florida have this issue? I do not know how many states other than Florida have this issue. It kind of pops up when a petitioner comes to us from different states and different states change. But there has been some states in the, or some case law that suggests different states do have filing requirements, bond requirements, similar to what we see here. And then there's some case law to suggest that other states do not. I think what's important here is, and what makes this case a little bit different than some of the other cases in the past, is the extent of the injuries suffered by A.M. She's incapacitated for the remainder of her life. So a lot of the decisions involving this specific point really discuss when the minor reaches the age of majority. And that's just not an issue in this case. So regardless of where a petitioner lives, there is going to be significant funding in and out of the guardianship account based on the annuity payments yearly and monthly for the remainder of A.M.'s life. I think it's significant here. Let me just follow up on something I think I asked before. The special master's order would or would not allow the government to pay this amount on a yearly basis until such time, if it ever occurred, that the family moved out of a state where maintenance fees were required to keep a guardianship going. The special master allowed for the respondent to pay out these costs via the purchase of an annuity. And did the special master allow the ongoing 40-year payment once a year from the government or not? Are you talking about specific to the guardianship fees? Or are you talking about the underlying annuity? He gave respondent the option to purchase an annuity or pay it out in a lump sum. So if the obligation to pay maintenance fees came to an end because the family was no longer in the state, in a state requiring it, then so would the government's obligation to, under the fees opinion, the special master's fees award would also come to an end. So I am not very privy to the ways in which the respondent purchases an annuity and what's required. I'd have to defer to my colleague on that. I'm not being clear. I'm not asking about what the government will choose to do, what it does in other cases. I'm asking only about what the order from the special master permits the government to do. The government is concerned about this windfall, about what if a week from now or a year from now or four years from now they move out of Florida and into a state where there are no maintenance fees required. We don't want to keep paying. Does the special master's order on this subject permit that? Permit them to stop paying if that happens? I don't think it excludes the possibility. It does specifically permit for them to provide or purchase an annuity for the remainder of her life. So should she pass away, there would be notification to the government and the annuity funds would stop. And, you know, but specifically he does address the concerns of a windfall in that manner. The special master based his decision on section 15E and I think, again, it's worth repeating that the respondent's proffer requires guardianship be maintained in order for the petitioner to receive her annuity payments and her damages. Petition became legally liable for the cost to maintain guardianship on the issuance of the December 2016 judgment. It's the court, the one cannot disentangle the awarded compensation for A.M.'s injuries, her vaccine injuries from the requirement to maintain the guardianship. Again, guardianship is the only vehicle for which A.M. may receive compensation. In terms of the jurisdictional arguments raised by the respondent in the Court of Federal Claims' decision, it's worth noting that the Court of Federal Claims reached the same conclusion of the special master and affirmed the decision, did not vacate it. Respondent's argument is that, in effect, this is some sort of appeal or some repeal of the earlier judgment awarding compensation in 2016. However, the review of the record shows that there is no appeal, that there is just multiple decisions and multiple judgments, which is actually routine practice in the vaccine program. The case was final earlier, and there was a joint notice not to seek review. And so why wasn't it over? Earlier. Joint notice not to seek review of the special master's determination on damages, decision awarding damages. Certainly, that case was not appealed, and I don't believe that the Court of Federal Claims' April 2018 decision actually works in effect or overtly to appeal that decision. Or a 15A award was too late. And, again, I do think it's worth noting that the April 2018 judgment awards compensation. It does not contradict the earlier 2016 judgment. The judgment does not indicate or specify what section those costs are awarded. If that earlier judgment under E was incorrect, then it was too late to bring it under A. Well, the earlier judgment under E, again, was not vacated. It was affirmed. And the April 2018 judgment that flowed from that is just a separate award and determination of costs. And, again, the practice of having multiple decisions and judgments awarding different types of compensation in this program is well-recognized. I do think it's worth mentioning, as well, that the Court of Federal Claims certainly had the power to vacate the special master's decision, but did not do so. He specifically affirmed it. So what you're asking us to do is to affirm the Court of Federal Claims decision, but under a different legal theory, the 15E? I think that both of the decisions, the special master and the Court of Federal Claims, can be maintained. I don't think that they're necessarily mutually exclusive. I think the holdings in each are valid. I think these costs can be bought under 15A or 15E. It's customary in this program, just by routine practice of the parties, that they are handled under 15E. And that is something that's also alluded to and addressed in the recent Martin decision, as well. So you're saying as a matter of general practice from your knowledge, these kinds of costs tend to be included in the post-merits fee award, not in the merits 15A judgment? In my experience, in my review of the case law, these are traditionally handled under 15A. Which relates to attorney fees. Well, it allows for attorney's fees and other costs. So it allows for attorney's fees, attorney's costs. It's under E, which is attorney fees. Sure. And petitioner's costs are routinely included and adjudicated, as well. Sometimes nominal things, such as the filing fee to file the petition, or petitioner's costs to gather and send medical records to the attorney. So petitioner's costs, just as a general grouping, are very often, in almost every case that they are incurred, handled under 15E. Thank you, counsel. Mr. Principato has some rebuttal time. Just briefly, two points. Judgment on the merits in this case was for all compensation that would be awardable under 15A. By awarding further compensation under 15A on the attorney's fees issue, the Court of Federal Claims effectively did overrule the earlier finding of merits judgment. And to the second point, the special master proposed a life-contingent annuity only. It didn't take care of the possibility that petitioner would move out of the state. It didn't account for any other potential scenarios where a petitioner wouldn't have to pay these costs. But the opposing counsel says that the fees of this nature are generally dealt with under E. They're generally brought under E, and they're often... I can't think of a case where they've been awarded, other than in this case and in Taddeo, the same special master. In the Taddeo case, as was mentioned in the Court of Federal Claims decision, I believe on appendix page 7, and the Court of Federal Claims explicitly disagreed with that. We have several other cases. We're talking so fast. Oh, I'm sorry. These claims are typically... These types of fees and costs are typically brought under 15E. So the Taddeo case, did that go up? That did not. That was not appealed. But that was... So the government let those payments be made in one case, but not another? The government can't appeal every single case. We chose to do it here, and we had the Court of Federal Claims... You chose to do it where the damage was so severe? Um, we thought that we had a good legal theory here. And the other cases that we've cited have disagreed that these costs are compensable under 15E. We look at the case Crespo. It was very recently out of the Court of Federal Claims that agreed with the government that these costs are not compensable under 15E. The only special master I know of that has found that these costs are compensable under 15E is the special master in this case, and he was the same special master in Taddeo. Does the joint notice have special meaning here? I'm sorry, the joint notice... Does the joint notice have special meaning? The joint notice not to seek review? Yes, that rendered the merits decision final and unappealable. So the joint notice not to seek review of the merits decision rendered that decision final. But your view is these costs wouldn't have been covered under A anyway? Correct. They wouldn't be awardable as either under A or E. The Court of Federal Claims said that they would be awardable as case management. It talks about the future, it uses will be, and these costs relate to residential and custodial care, case management services. That's correct. So the Court of Federal Claims concluded that these costs would be awardable as case management services or residential and custodial care and services. But in doing so, he took them out of the context and applied too broad of a definition for both of those terms. Those terms appear in the enumerated list under 15A and they must be construed in the context of the surrounding terms. And so we also have 15D, which is compensation that is specifically not awardable. It excludes from the act. It says compensation other than for the health, education, and welfare of a petitioner is not awardable under the act. The Court of Federal Claims in a prior case, Holsey versus the Secretary of Health and Human Services, adopted the correct definition of case management services. In that case, the court correctly concluded that the term encompasses the coordination of social and medical services from various sources, rejected the argument that the term can be read expansively to include fiduciary services. And similarly, the term residential and custodial care and service expenses must also be construed narrowly. Again, this is a term that appears as an enumerated list of elements of compensation for medical and educational services. On your D argument, are you saying that these guardianship fees couldn't fall under the welfare of the person? Right. So they couldn't be awarded as case management services or residential care and custodial expenses as the Court of Federal Claims held. And they couldn't fit under 15A because 15A speaks exclusively. All right, but you're not saying that D would exclude it when they talk about the health, education, and welfare of the patient. Well, D is explicitly a limiting principle of the statute that says there's a certain compensation that won't be awarded. I mean, assuming we're not talking about E or A, you're not saying that this wouldn't fall within the bounds of the welfare of the patient. Well, it might fall within the bounds. I don't think we can expanse of this. I mean, a guardian. Sorry. Patient needs a guardian. That's a given. Right. OK. Do you have one final thought? One final thought. I just want to briefly return to the fact that the special master only proposed a life contingent annuity. That only takes care of one scenario where a petitioner might not pay these costs. That doesn't sound like a final thought. It sounds like an additional thought. My very final thought is that we can imagine scenarios in which a petitioner is not going to pay these costs. If we can imagine those scenarios, they have not yet been incurred. The secretary respectfully requests that the judgment be reversed. Thank you. Thank you, counsel. The case is submitted. Thank you. All rise.